UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| | NO. 15-155 |
| ELAINE DAVIS | |
| PRAMELA GANJI, M.D. | |
| GODWIN OGBUOKIRI, M.D. | SECTION "N" (3) |

# **O R D E R**

Before the Court are three separate motions, one filed by each of the defendants herein, as follows:

1. Motion to Exclude Evidence in Government's Notice of Intent of Defendant Elaine Davis (Rec. Doc. 122);

2. Motion to Exclude the Evidence Outlined in the Government's Notice of Defendant Godwin Ogbuokiri, M.D. (Rec. Doc. 124); and

3. Motion in Limine/Response to Rule 404(b) Notice of Defendant Pramela Ganji, M.D. (Rec. Doc. 125).

These motions are opposed by the Government (Rec. Doc. 139).

**I.    BACKGROUND**

On June 12, 2015, defendants Elaine Davis, Pramela Ganji, M.D. and Godwin Ogbuokiri, M.D. were indicted and charged in five counts: conspiracy to commit health care fraud,[1] and four

---

[1] 18 U.S.C. § 1349.

1

substantive counts of health care fraud.[2]  On January 4, 2016, the Government filed a "Notice of Intent to Introduce Evidence Intrinsic to the Charged Conspiracy or, Alternatively, Pursuant to Federal Rule of Evidence 404(b)." (Rec. Doc. 119)  In response to the Government's "Notice of Intent", the defendants filed the three subject motions.  The Court has carefully considered the supporting memoranda for the motions, the opposition, and also the Government's arguments made in open court on Monday, February 1, 2016.

## II.    LAW AND ANALYSIS

Rule 404(b) provides, in relevant part:

>   (1)    *Prohibited Use.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
>   (2)    *Permitted Uses*. . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. . . .

FED. R. EVID. 404(b).

If the disclosed evidence is extrinsic to the charged offense(s), the Court must then evaluate the evidence's admissibility according to a two part test. *United States v. Beechum*, 582 F.2d 898, 909-18 (5th Cir. 1978) (en banc); *see also United States v. Sumlin*, 489 F.3d 683, 690 (5th Cir. 2007). First, the court must determine whether the extrinsic evidence is "relevant to an issue other than the defendant's character," such as the defendant's motive, intent, or knowledge. *Beechum*, 582 F.2d at 911. Second, if the court determines that the evidence is relevant to another issue, the court

---

[2]    18 U.S.C. § 1347.

must determine that the evidence "possess[es] probative value that is not substantially outweighed by its undue prejudice and...meet[s] the other requirements of rule 403." *Id.* Federal Rule of Evidence 403 permits courts to exclude relevant evidence "if its probative value is substantially outweighed by a danger of...unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

In its "Notice of Intent", the Government describes two general evidentiary areas it intends to present to the jury at trial:  (1)  Evidence relating to other home health companies, i.e., evidence of services that defendants Ganji and Ogbuokiri (together, "the Defendant Doctors") claimed to provide in connection with other HHCs and for Medicare beneficiaries enrolled in those HHCs;[3] and (2)  Evidence relating to the Defendant Doctors' Part B Medicare claims, in which the government seeks to introduce evidence showing that the Defendant Doctors personally billed Medicare, through Part B, for services to beneficiaries without regard to the medical condition of these beneficiaries, including those who were purported clients of Christian and other HHCs.[4]

---

[3] The government claims this evidence "relates to and includes (1) the Defendant Doctors' certifications that beneficiaries at these HHCs qualified to receive home health care; (2) the Defendant Doctors Medicare Part B billings related to these beneficiaries; (3) GANJI's practices at Abide and Nurses Per Diem, and OGBUOKIRI's practices at Diversified; and (4) evidence that GANJI and OGBUOKIRI were regarded as 'go-to' doctors by marketers and home health providers.  Some evidence relates to the Defendant Doctors' conduct prior to the time of the conspiracy identified in the Indictment."  (Rec. Doc. 119, p. 11.)

[4] The government includes in this category:  (1)  billing for services provided to dead beneficiaries (Rec. Doc 119, p. 13); (2)  that the Defendant Doctors did not oversee the care of patients they certified for home health care through other HHC's (Rec. Doc. 119, p. 14); and (3)  evidence of the Defendant Doctors' home health certification practices at Christian and other HHCs, wherein the government seeks to introduce evidence that the Defendant Doctors did not see the beneficiaries they referred for home health services, and when they did, their examinations of these patients were perfunctory (Rec. Doc. 119, p. 16).

For her part, Defendant Davis (and the other defendants as well) assert that the Government's "Notice of Intent" is not specific enough, and that "evidence relating to other home health agencies" is extrinsic evidence not admissible under Rule 404(b). (Rec. Doc. 122)

Defendant Ogbuokiri objects to "evidence relating to other home health companies", "evidence relating to the Defendant Doctors' Part B Medicare claims", "evidence of Dr. Ogbuokiri's home health certification practices", as well as the Government's characterization of Defendant Ogbuokiri's overseeing of care of patients. Likewise, Defendant Ganji objects to the Government's evidence purporting to demonstrate that Ganji was one of the most prolific referrers of home health care in Louisiana, and that she used fraudulent certifications with several companies in and around New Orleans; and evidence that Defendant Ganji sought payments in exchange for certifying Medicare beneficiaries for Abide and Nurses Per Diem.

Though the defendants' arguments attack various aspects of the Government's "Notice of Intent", the Court will address all of the defendants' objections utilizing the general categories set forth in the Government's "Notice of Intent."[5] In so doing, the Court does not believe the Government's "Notice of Intent" to be insufficiently detailed under the standards set forth in Rule 404(b), and thus overrules the objections founded on that basis.

**A.     "Evidence Relating to Other Home Health Companies"**

The Court remains concerned that this trial, somewhat complex as it is, will be prolonged unnecessarily by exploration and discussion of other home health companies not at issue here. The

---

[5] At oral argument, defense counsel divided this evidence into three main categories: (1) the kickbacks, (2) false home healthcare certifications, and (3) migrating beneficiaries.

Government claims that this evidence "helps to explain how the Defendant Doctors ended up referring so many beneficiaries for home health care at Christian, notwithstanding the absence of a direct employment relationship", and that the Defendant Doctors' conduct at other HHCs "explains how they became known among marketers and providers in the home health care industry in and around southern Louisiana as 'go to' physicians who could be relied upon to sign home health certifications under any circumstance."  (Rec. Doc. 119, p. 11)  The Government also seeks to explain to the jury that other HHCs were shut down because their operators were indicted for health care fraud, and that their employees then took beneficiaries (who allegedly were not home bound) over to Christian, owned and operated by Defendant Davis.  Thus, according to the Government, large volumes of "cross over beneficiaries" migrated amongst fraudulent HHCs and Christian.  As to this evidence, the defendants' motions are **GRANTED IN PART AND REFERRED TO TRIAL IN PART**.

While the Court understands that some evidence regarding the Defendant Doctors' certifications of beneficiaries at other HHCs who eventually migrated to Christian[6] might be relevant, and that the Defendant Doctors were regarded as "go to" doctors reliably willing to sign home health certifications under questionable circumstances, the Court believes that not only is evidence of other health care fraud (especially where criminal charges were brought and convictions

---

[6]  Defendant Davis argues that this evidence is extrinsic to the charged conspiracy. (Rec. Doc. 122-1, pp. 5-6)  See *United States v. Crawley*, 533 F.3d 349, 353-54 (5th Cir. 2008).  While such might be the case for patients/beneficiaries at other HHCs, the Court disagrees as to those who wound up at Christian.  As to those beneficiaries, their handling is inextricably intertwined with evidence of the charged conspiracy, is part of the same alleged criminal episode, and the other acts (particularly for those beneficiaries who migrated to Christian) might even be a necessary preliminary step toward completing the charged offense.

secured), by other HHCs and/or their employees, <u>not</u> relevant, such evidence is unduly prejudicial to the defendants herein. This case is not about other individuals indicted for health care fraud, or other HHCs who practiced health care fraud in their operations. The Government is specifically prohibited from mentioning, or asking a witness to mention, any other convictions at this trial. Insofar as particular "cross over beneficiaries" are concerned, i.e., beneficiaries who eventually would up at Christian, the Government's evidence in this regard would be limited to those identified by the Government on February 1, 2016, or by way of 1006 summary. To be clear, to the extent any of those identified individuals on the Government's February 1st list have a patient history indicating "cross over" or "migration" between another HHC and Christian, such evidence of prior HHC experience is admissible.

### B.  Evidence Relating to the Defendant Doctors' Part B Medicare Claim

#### 1.  Billing for Services Provided to Dead Beneficiaries

The Government seeks to introduce evidence that the Defendant Doctors claimed to have provided services to Medicare beneficiaries who were deceased on the date of the purported service. The Government asserts that this evidence will tend to prove that the Defendant Doctors, in many cases, had no knowledge of the true medical conditions of beneficiaries whom the Defendant Doctors certified as eligible for home health care, and as under the Defendant Doctors' care. The Government argues that this Rule 404(b) evidence will demonstrate to the jury that these two Defendant Doctors "regularly and systematically signed home health care certifications wholly indifferent to the actual medical condition of beneficiaries." (Rec. Doc. 119, p. 13)

The defendants' objections to this evidence is also **REFERRED TO TRIAL**. The Court is uncertain, as of this date, that the Defendant Doctors are accused of billing for services provided to dead beneficiaries, or for falsely certifying medical conditions of beneficiaries who were deceased at the time of such certification, *for Christian*. In other words, the indictment charges the defendants with conspiring to defraud Medicare through the referral of beneficiaries to Christian Home Health Care, Inc. See Indictment, ¶¶ 23, 24 and 25. The allegations against the Defendant Doctors (Indictment, ¶¶ 28 and 29) relate solely to beneficiaries whom Christian claimed to serve, and not any other HHC. Presumably, in seeking to introduce "billing for services provided to dead beneficiaries", the Government's evidence as its relates to *Christian* will include instances where one or both of the Defendant Doctors falsely certified, or billed for services, for a beneficiary who was deceased at the time. If such is the case, the Court will likely allow evidence of such course of conduct as it relates to other HHCs, in agreement with the Government's argument that such evidence of similar fraud serves to prove that the defendant(s) engaged in substantially similar fraudulent acts and that it is less likely that the defendant had a lawful intent with regard to the Christian billings/certifications. On the other hand, if the Government cannot demonstrate that either of the Defendant Doctors certified *for Christian* beneficiaries and/or billed for such service for a beneficiary who was deceased at the time of such certification, then the Court will grant the defendants' motion, and evidence of certifying and/or billing on claims for which the beneficiary is deceased at other HHCs shall not otherwise be admissible. Indeed, unless the Defendant Doctors committed similar actions in the service of Christian and co-defendant Davis, evidence of these other

acts is not only irrelevant, but also highly prejudicial to the charges asserted herein. The Government has had every opportunity to charge the Defendant Doctors with such conduct, but it appears nowhere in this Indictment.

### 2. Data that Shows the Defendant Doctors did not Oversee the Care of Patients they Certified for Home Health Care through other HHCs

The Government seeks to introduce evidence that shows Christian and other HHCs billed Part A for services they claimed to provide to beneficiaries who were certified for home health by the Defendant Doctors, but who the Defendant Doctors in their Part B billings (1) did not claim they provided any services to, or (2) only claimed one instance of providing care to that beneficiary. (Rec. Doc. 119, p. 15) The Government asserts that this evidence reflects that many of the beneficiaries that the Defendant Doctors referred for home health services were not under their care. The Government further argues that such evidence will demonstrate that the Defendant Doctors routinely failed to supervise the care of Medicare beneficiaries as part of a common plan to admit such beneficiaries to HHCs without regard to whether they needed home health care services.

Without yet knowing the full extent of the defense in this matter, the Court is unable to determine whether such evidence is irrelevant surplusage (which seems to be the case from a simple review of the face of the Indictment), or relevant information which should be admitted for the jury's consideration in light of a defense of lack of scienter. It is expected that the Government's presentation to the jury be focused on the actions of the Defendant Doctors, as well as Davis and Christian, for overseeing the care of patients they certified for Christian/Davis, and *not* other HHCs. The Court understands, however, that a defense may be mounted to argue that instances of improper

certifications were a result of "mistake", "accident", "oversight", or other incident, such that overt purpose and requisite intent are lacking.  In such event, it seems appropriate that the Government be allowed to make a limited showing of such other conduct by the Defendant Doctors at other HHCs, in order to demonstrate to the jury that, contrary to the defense, an illegal common plan or scheme existed and was perpetrated by the Defendant Doctors.  Accordingly, the defendants' motions in this regard are also **REFERRED TO TRIAL**.

### 3. Evidence of the Defendants' Home Health Certification Practices at Christian and other HHCs

The Government asserts that the Defendant Doctors "were prolific referrers of home health care, but their practices were sinecure", in that they often did not see the beneficiaries they referred for home health services, and when they did, their examinations of these patients were perfunctory.

With regard to this evidence, the defendants' motions are **DENIED**, with the following caveat:  the Government shall not be allowed to select further individual beneficiaries and/or claims beyond those identified by the Government on February 1, 2016, to present to the jury specifically.  Though the Government may, with proper foundation, introduce general evidence of such practices, and the Defendant Doctors' reputation for such practices, it would be unfair and unduly prejudicial for the Government to suddenly select individual instances (not previously identified by the Government) to illustrate such practices, if those instances were not already specifically identified by the Government in conformity with this Court's Orders.  This ruling, however, does not preclude defense counsel from questioning such witnesses with specific references to beneficiaries and/or claims, in the event the witness is familiar with such beneficiaries and/or claims.

### III.     CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND REFERS TO TRIAL IN PART** the motions of defendants directed to "evidence relating to other home health companies." The motions directed to "evidence relating to Defendant Doctors' Part B Medicare claims", "evidence described as 'billing for services provided to dead beneficiaries'", and "data that shows the Defendant Doctors did not oversee the care of patients they certified for home health care through other HHCs" are **REFERRED TO TRIAL**; and "evidence of the defendants' home health certification practices at Christian and other HHCs" is **DENIED**, subject to the terms of this Order. Of course, the Court's rulings herein are without prejudice and subject to modification in the event any defendant opens the door for such evidence at trial.

**IT IS FURTHER ORDERED** that, to the extent limiting instructions are desired by the defendant(s), counsel are instructed to prepare a short and concise limiting instruction, circulate it to the Government in an attempt to discern that such limiting instruction is without objection, and promptly provide such instruction to the Court prior to trial.

New Orleans, Louisiana, this 12th day of February 2016.

_____
**KURT D. ENGELHARDT**
**United States District Judge**